UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KENNETH FRANCO, an incapacitated individual, by his GUARDIANS AD LITEM, CECILIA GRIGLAK and PATRICK GRIGLAK and CECILIA GRIGLAK and PATRICK GRIGLAK, Individually,<br><br>      Plaintiff,<br><br> -against-<br><br>FARLEIGH DICKINSON UNIVERSITY, ABE BOW (1-3 fictitiously named), JOHN VIN (1-3 of them - fictitiously named), DEF COMPANY(1-10 fictitiously named), UPSILON HEXATON CHAPTER OF PHI SIGMA KAPPA FRATERNITY, THE GRAND CHAPTER OF PHI SIGMA KAPPA, INC., ABC COMPANY (1-10 names being fictitious), XYZ COMPANY (1-10 names being fictitious), JOHN DOES (1-10 names being fictitious), JANE DOES (1-10 names being Fictitious); ROBERT ROES (1-10 names being fictitious), SALLY SOES (1-10 names being fictitious); JOE LOES (1-10 names being Fictitious); FRANK DADES; DOMINICK STELLACCIO; JASON MISENER; CRAIG FELMING; MATTHEW PIERONI; RACHEL LISTMAN; MANNY MOES (1-10 names being fictitious), GHI COMPANY (1-10 fictitiously named), JKL TAVERN AND/OR LIQUOR STORE (1-10 names being fictitious), TOMMY TOES (1-10 names being fictitious), MARY HOE (1-5 names being fictitious), JACK HOE (1-5 names being fictitious), UNITED RENTALS (NORTH AMERICA), | Civil Action No.:<br><br>22-cv-6447 |

| |
|---|
| INC., URN (1-5 names being fictitious), ROY VIN (owner of vehicle 1-3 names being fictitious), DAVE LIN (operator of vehicle 1-3 names being fictitious), LAN COMPANY (1-5 names being fictitious), and PETER LOE (1-3 names being fictitious), TILCON NEW YORK, INC., MATTHEW SMIGELSKI, SPENCER GOLDIN, JAMES FRISBY, MICHAEL DACOSTA, JOSEPH PISERCHIO,<br><br>                                    Defendants. |

## NOTICE OF REMOVAL

Meridian Resource Company, LLC ("Meridian") and Horizon Blue Cross Blue Shield of New Jersey ("Horizon") respectfully remove this action to the United States District Court for the District of New Jersey, and state as follows:

1. On October 17, 2022, Plaintiff Kenneth Franco ("Plaintiff") filed a motion in the Superior Court of New Jersey, Bergen County, Case No. BER-L-5362-16, directed at Meridian and Horizon (the "Motion"). As relief, the Motion seeks a court order invalidating a federal health benefits reimbursement lien asserted by Horizon (and its subrogation and reimbursement vendor Meridian) on behalf of a federally-sponsored health benefits plan that is governed by the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901-14. Neither Meridian nor Horizon are named defendants in this case, which is a tort suit brought by Plaintiff against numerous alleged tortfeasors. Meridian first became aware of the Motion on October 28, 2022, when Meridian first received a copy of a "Notice of Motion," "Proposed Order," "Certification" of Raymond S. Vivino, and a copy of the docket entry for the Motion. Horizon first became

aware of the Motion on October 27, 2022, when Horizon first received a copy of the "Notice of Motion," "Proposed Order," "Certification" of Raymond S. Vivino, and a copy of the docket entry for the Motion.  Meridian and Horizon have attached copies of all process, pleadings, or orders received by them (*i.e.*, the "Notice of Motion," "Proposed Order," and "Certification" of Raymond S. Vivino, and a copy of the docket entry for the Motion) at Exhibit 1 to this Notice of Removal.

2. This removal notice is filed within the 30-day period required in 28 U.S.C § 1446(b).

3. Meridian and Horizon remove this case pursuant to 28 U.S.C. § 1442(a)(1), which permits removal where a proceeding is brought against a person acting under the direction of a federal agency and its officers for actions taken under color of federal office.  In addition, Meridian and Horizon remove this case pursuant to 28 U.S.C. § 1441 as an action over which this Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff's Motions turns on the construction of federal government contracts and federal common law or is otherwise based on federal law.

## NATURE OF THE CASE

4. This is a tort action, brought by Plaintiff against various alleged tortfeasors and arising from an accident and a resulting "catastrophic injury" suffered by Plaintiff in 2014.  Ex. 1 hereto, Certification of Raymond S. Vivino ("Vivino Cert.") ¶ 2.  Plaintiff's health plan paid $528,536.33 in benefits in connection with the injuries Plaintiff sustained in that accident.  *Id*. ¶ 5; Certification of Robyn Brenner Lepani ("Lepani Cert.") ¶ 9 (Ex. 2 hereto).  Plaintiff's counsel has informed Meridian that Plaintiff settled his tort claims for $1,500,000 in 2022.  Lepani Decl. ¶ 13; *see also* Vivino Cert. ¶¶ 3, 14 & Ex. B thereto.

5. When he received the medical treatment at issue in this case, Plaintiff was enrolled (through his mother, Cecilia Griglak) in the Blue Cross and Blue Shield Service Benefit Plan (sometimes, "the Plan"), which is one of the federal government's health benefits plans for federal employees and their dependents. Lepani Cert. ¶ 8; *see also* Vivino Cert. ¶¶ 4, 5. The Plan is created by a federal government contract between the United States Office of Personnel Management ("OPM") and the Blue Cross and Blue Shield Association ("BCBSA") pursuant to FEHBA.[1] Lepani Cert. ¶ 4; *see generally* 2013 Service Benefit Plan Master Contract (Ex. A to Lepani Cert.) [hereinafter "2013 Master Contract"]; 2022 Service Benefit Plan Master Contract (Ex. B to Lepani Cert.); *see also* 2014 Statement of Benefits for the Service Benefit Plan at 5 (Ex. C to Lepani Cert.) [hereinafter "2014 Statement of Benefits"]; 2015 Statement of Benefits for the Service Benefit Plan at 5 (Ex. D to Lepani Cert.) [hereinafter "2015 Statement of Benefits"]; 2016 Statement of Benefits for the Service Benefit Plan at 5 (Ex. E to Lepani Cert.) [hereinafter "2016 Statement of Benefits"]; 2017 Statement of Benefits for the Service Benefit Plan at 5 (Ex. F to Lepani Cert.) [hereinafter "2017 Statement of Benefits"]; 2018 Statement of Benefits for the Service Benefit Plan at 5 (Ex. G to Lepani Cert.) [hereinafter "2018 Statement of Benefits"]; 2019 Statement of Benefits for the Service Benefit Plan at 4 (Ex. H to Lepani Cert.) [hereinafter "2019 Statement of Benefits"]; 2020 Statement of Benefits for the Service Benefit Plan at 4 (Ex. I to Lepani Cert.) [hereinafter "2020 Statement of Benefits"]; 2021 Statement of Benefits for the Service Benefit Plan at 4 (Ex. J to Lepani Cert.) [hereinafter "2021 Statement of

---

[1] At one point in time, Plaintiff's counsel incorrectly believed that the Plan was governed by ERISA. *See* Ex. A to Vivino Cert. The Service Benefit Plan is not governed by ERISA, because ERISA explicitly provides that its provisions "shall not apply to any employee benefit plan if such plan is a governmental plan (as defined in section [1002](32) [of this title])." 29 U.S.C. § 1003(b)(1). Section 1002(32), in turn, defines "governmental plan" as, inter alia, a "plan established or maintained for its employees by the Government of the United States." *Id.* § 1002(32).

Benefits"]; 2022 Statement of Benefits for the Service Benefit Plan at 4 (Ex. K to Lepani Cert.).[2]

6. In contracting to establish the Plan, BCBSA acts on behalf of local Blue Cross and Blue Shield companies that administer the Plan in their respective localities; Horizon is such a company and administers the Plan in New Jersey. *See, e.g.*, 2014 Statement of Benefits at 5; 2016 Statement of Benefits at 5; Lepani Cert. ¶ 4. Meridian is Horizon's subrogation and reimbursement vendor. Lepani Cert. ¶ 10; *see also* Vivino Cert. ¶ 6.

7. The Plan's Statement of Benefits states expressly that the Plan shall have a right to reimbursement from an enrollee for benefits paid to that enrollee, in the event the enrollee recovers for a condition or injury from a third party and the Plan had paid benefits in association with that condition or injury. *E.g.*, 2014 Statement of Benefits at 133-34; 2015 Statement of Benefits at 137-38; 2016 Statement of Benefits at 136-37; 2022 Statement of Benefits at 144-45. Pursuant to this provision, Meridian and Horizon asserted, on the Plan's behalf, a reimbursement lien against Plaintiff's recovery and requested that Plaintiff reimburse the Plan for the benefits it paid in connection with Plaintiff's injuries. *See, e.g.*, Vivino Cert. ¶ 7 & Ex. A thereto; Lepani Cert. ¶ Cert. ¶ 11.

8. Plaintiff has refused to honor the Plan's reimbursement lien. Instead, Plaintiff

---

[2] Periodically, the OPM-BCBSA contract is restated in what we call a "Master Contract." Lepani Cert. ¶ 5. The 2013 and 2022 Master Contracts are the most recent versions. *Id*. In other years, OPM and BCBSA entered into amendments to the most recent version of the Master Contract. *Id*. ¶ 6. For the sake of completeness, the 2014 through 2021 annual amendments to the 2013 Master Contract are attached as Exhibits L through S, respectively, to the Lepani Certification. Each year, an annual Statement of Benefits is an Appendix to, and incorporate in, the applicable Master Contract or annual amendment. Each annual Statement of Benefits is available on OPM's official government website. For example, the 2014 version of the Statement of Benefits can be downloaded at: https://www.opm.gov/healthcare-insurance/healthcare/plan-information/plan-codes/2014/brochures/71-005.pdf (last visited Nov. 2, 2022). Other versions can be downloaded by changing the year in the web address. The OPM-BCBSA contract provisions and Statement of Benefit provisions relevant to this Notice of Removal are substantially the same in each year from 2014 through 2022.

contends that he should not have to repay the entire reimbursement amount because the settlement does not make him whole for all of his alleged damages. *See, e.g.*, Vivino Cert. ¶ 15; *see also id*. ¶ 19.  Plaintiff now alleges that Horizon and/or Meridian acted in bad faith in not compromising the Plan's reimbursement lien and interest and, in the Motion, seeks to have the Plan's reimbursement lien eliminated entirely.  *See id*. ¶ 21; Ex. 1 hereto, Notice of Motion at 2 (requesting an order "[r]ekoving all lien recovery rights against Horizon Blue Cross Blue Shield, Federal Employee Health Plan of Cecilia Grig[l]ak and Meridian [] Resource Company LLC"); Ex. 1 hereto, Proposed Order at 3 ("All lien recovery rights of Horizon Blue Cross Blue Shield, Federal Employee Health Plan of Cecilia Grig[l]ak and Meridian [] Resource Company LLC, shall be revoked").  Plaintiff does not explain any legal theory as to why he might be entitled to have the Plan's reimbursement lien and interest revoked, but presumably Plaintiff seeks to invoke state law.

9. Contrary to the relief against Meridian and Horizon that Plaintiff seeks in the Motion, the Plan's express terms require that "[a]ll recoveries" obtained by Plaintiff "must be used to reimburse [the Plan] in full for benefits [it] paid." *E.g.*, 2014 Statement of Benefits at 133-34; 2015 Statement of Benefits at 137-38; 2016 Statement of Benefits at 136-37; 2022 Statement of Benefits at 144.  The Plan's terms also state that the Plan is "entitled under [its] right of recovery to be reimbursed for [its] benefit payments even if [Plaintiff is] not 'made whole' for all of [his] damages in the recoveries that [he] receive[s]." *Id*.  It also states that the Plan "will not reduce [its] share of any recovery unless, in the exercise of [its] discretion, [it] agree[s] in writing to a reduction (1) because [Plaintiff did] not receive the full amount of damages that [he] claimed or (2) because [he] had to pay attorneys' fees." *Id*.  The Plan never agreed (in writing or otherwise) to such a reduction.  Lepani Cert. ¶ 12; Vivino Cert. ¶ 17.

10. Accordingly, under the Plan's express terms as agreed to with OPM, the Plan is entitled to recover from Plaintiff the entire amount of benefits that it paid in connection with Plaintiff's injuries.

## CONTRACTUAL AND REGULATORY BACKGROUND

11. FEHBA and the regulations implementing it set forth a comprehensive framework for the supervision and administration of FEHBA plans, including the Service Benefit Plan.

   a. Under FEHBA, OPM is vested with sole authority to contract for the provision of health plans, to determine the benefit structure of each plan, and to promulgate the official description of a plan's terms in a Statement of Benefits. *See* 5 U.S.C. §§ 8902(a), (d), 8907. The Statement of Benefits is incorporated into the government contract between OPM and BCBSA. *See* 2013 Master Contract § 2.2(a); 2022 Master Contract § 2.2(a); *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 684 (2006).

   b. OPM's regulations require that "[a]ll health benefit plan contracts shall provide that the Federal Employees Health Benefits (FEHB) carrier is entitled to pursue subrogation and reimbursement recoveries." 5 C.F.R. § 890.106(a); *see also id*. § 890.106(c), (g). OPM's regulations define "[r]eimbursement" as "a carrier's pursuit of a recovery if a covered individual has suffered an illness or injury and has received, in connection with that illness or injury, a payment from any party that may be liable, any applicable insurance policy, or a workers' compensation program or insurance policy, and the terms of the carrier's health benefits plan require the covered individual, as a result of such payment, to reimburse the carrier out of the payment to the extent of the benefits initially paid or provided." *Id*. § 890.101(a).

   c. OPM's regulations also state that any "reimbursement recovery on the part of a FEHB carrier shall be effectuated against the recovery first (before any of the rights of any

7

other parties are effectuated) and is not impacted by how the judgment, settlement, or other recovery is characterized, designated, or apportioned." *Id*. § 890.106(e).

    d. The Statement of Benefits for the Plan (which, again, is part of the government contract between OPM and BCBSA) states expressly that the Plan shall have a right to reimbursement from an enrollee for benefits paid to that enrollee, in the event the enrollee recovers for a condition or injury from a third party and the Plan had paid benefits in association with that condition or injury. *E.g.*, 2014 Statement of Benefits at 133; 2015 Statement of Benefits at 137; 2016 Statement of Benefits at 136; 2022 Statement of Benefits at 144.

    e. As noted above, the Statement of Benefits states: "[a]ll recoveries you or your representatives obtain (whether by lawsuit, settlement, insurance or benefit program claims, or otherwise), no matter how described or designated, must be used to reimburse us in full for benefits we paid." *E.g., id*. It also provides that "[w]e are entitled under our right of recovery to be reimbursed for our benefit payments even if you are not 'made whole' for all of your damages in the recoveries that you receive." *E.g., id*. And it states that the Plan "will not reduce [its] share of any recovery unless, in the exercise of [its] discretion, [it] agree[s] in writing to a reduction (1) because [Plaintiff did] not receive the full amount of damages that [he] claimed or (2) because [he] had to pay attorneys' fees." *E.g., id*.

    f. In addition, the federal contract between OPM and BCBSA provides:

> The Carrier's subrogation rights, procedures and policies, including recovery rights, for payments with respect to benefits shall be in accordance with the provisions of the agreed upon brochure text [*i.e.*, the Statement of Benefits], which is incorporated in this Contract in Appendix A. As the member is obligated by Section 2.3(a) to comply with the terms of this Contract, the Carrier, in its discretion, shall have the right to file suit in federal court in order to enforce those rights.

2013 Master Contract § 2.5(a); 2022 Master Contract § 2.5(a).

g. The OPM-BCBSA contract also requires the carrier to make "a reasonable effort to seek recovery of amounts to which it is entitled to recover in cases which are brought to its attention." *Id.* § 2.5(c) (as amended by § 4.1(m)); *see also Empire*, 547 U.S. at 685 (quoting contractual language).

h. Benefits paid under the Plan come from a special fund in the U.S. Treasury. *See* 5 U.S.C. § 8909(a); 48 C.F.R. §§ 1632.170(b), 1652.216-71(b); *Helfrich v. Blue Cross & Blue Shield Ass'n*, 804 F.3d 1090, 1092 (10th Cir. 2015). All reimbursement and subrogation recoveries under the Plan must be returned to that fund in the federal Treasury (net of the expenses in obtaining the recoveries). 48 C.F.R. §§ 31.201-5, 1631.201-70(a) & (g), 1652.216-71(b)(2)(i); *see also Empire*, 547 U.S. at 685 ("Pursuant to the OPM-BCBSA master contract, reimbursements obtained by the carrier must be returned to the Treasury Fund."); *Helfrich*, 804 F.3d at 1093; 2013 Master Contract § 2.5(b); 2022 Master Contract § 2.5(b).

i. Congress intended federal employees in every state to be treated consistently under FEHBA plans. For example, FEHBA includes a preemption provision. 5 U.S.C. § 8902(m)(1) (2000 Supp.) (as amended by the Federal Employees Health Care Protection Act of 1998, Pub. L. No. 105-266, § 3(c), 112 Stat. 2363, 2366). With this preemption provision, Congress sought to "strengthen the ability of national plans to offer uniform benefits and rates to enrollees regardless of where they may live." H.R. Rep. No. 105-374, at 9 (1997); *accord* S. Rep. No. 95-903, at 2 (1978) (legislative history of FEHBA's original preemption provision); *see also Coventry Health Care of Mo., Inc. v. Nevils*, 137 S. Ct. 1190, 1197 (2017); *Empire*, 547 U.S. at 686; *Helfrich*, 804 F.3d at 1099. This policy of nation-wide consistency also applies to subrogation and is embodied in the contract between OPM and BCBSA: "Effective January 1, 1997, all Participating Plans shall subrogate under a single, nation-wide policy

9

to ensure equitable and consistent treatment for all Members under the contract." 2013 Master Contract § 2.5(f) (as amended by § 4.1(m)); 2022 Master Contract § 2.5(f) (as amended by § 4.1(m)). In part because Congress intended enrollees in a FEHBA plan to be treated the same regardless of the state in which they live, OPM's regulations expressly state that FEHBA's preemption provision preempts state laws that limit or prohibit subrogation or reimbursement. *See Federal Employees Health Benefits Program; Subrogation & Reimbursement Recovery*, 80 Fed. Reg. 931, 932 (Jan. 7, 2015); 80 Fed. Reg. 29,203 (May 21, 2015); 5 C.F.R. § 890.106(h). A FEHBA plan's subrogation and reimbursement "rights and responsibilities are therefore effective notwithstanding any state or local law, or any regulation issued thereunder, which relates to health insurance or plans." 5 C.F.R. § 890.106(h). Recently, the Supreme Court held that FEHBA preempts state laws regarding subrogation and reimbursement. *Nevils*, 137 S. Ct. 1190.

## GROUNDS FOR REMOVAL

12. Because of the filing of the Motion against Meridian and Horizon, this action is removable for two independent reasons. First, this case is removable under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which authorizes removal of an action against "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). Second, this case is removable pursuant to 28 U.S.C. § 1441 because there is federal question jurisdiction in this Court.

### Removal Under the Federal Officer Removal Statute

13. In other cases involving the Plan, courts have confirmed that FEHBA reimbursement disputes just like the one in the Motion are removable by the Plan's

administrators under the Federal Officer Removal Statute. *See Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237 (9th Cir. 2017); *Jacks v. Meridian Res. Co.*, 701 F.3d 1224 (8th Cir. 2012); *Owens v. Health Care Serv. Corp.*, No. CV 16-95-BMM-JTJ, 2016 WL 7675406, at *3-5 (D. Mont. Dec. 16, 2016); *Bell v. Blue Cross & Blue Shield of Okla.*, No. 5:14-CV-05046, 2014 U.S. Dist. LEXIS 155723 (W.D. Ark. Nov. 3, 2014), *aff'd*, 823 F.3d 1198 (8th Cir. 2016). Courts have also held that FEHBA plan administrators can remove other types of cases under the Federal Officer Removal Statute. *See St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indemn. Co.*, 935 F.3d 352 (5th Cir. 2019); *Anesthesiology Assocs. of Tallahassee, Fla., P.A. v. Blue Cross Blue Shield of Fla., Inc.*, No. 03-15664, 2005 WL 6717869 (11th Cir. Mar. 18, 2005) (unpublished); *Inspire Malibu v. Anthem Blue Cross Life & Health Ins. Co.*, No. CV 16-5229, 2016 U.S. Dist. LEXIS 136244, at *10-17 (C.D. Cal. Sept. 30, 2016); *Vrijesh S. Tantuwaya MD, Inc. v. Anthem Blue Cross Life & Health Ins. Co.*, 169 F. Supp. 3d 1058, 1063-67 (S.D. Cal. 2016); *see also Omega Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 592 F. App'x 268 (5th Cir. 2014) (removal by FEHBA plan administrator under section 1442(a)(1) was objectively reasonable).

14. The federal officer removal statute "'is an exception to the well-pleaded complaint rule, under which (absent diversity) a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case arises under federal law.'" *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 811 (3d Cir. 2016) (quoting *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006)). "'Unlike the general removal statute, the federal officer removal statute is to be 'broadly construed' in favor of a federal forum.'" *Id*. (citations omitted). The federal officer removal statute "'grants independent jurisdictional grounds over cases involving federal officers where a district court otherwise would not have jurisdiction.'" *Jacks*, 701 F.3d at 1230

11

(quoting *Johnson v. Showers*, 747 F.2d 1228, 1229 (8th Cir. 1984)).

15. This action is removable by Meridian and Horizon, even though they are not parties in the case; it is sufficient that Plaintiff has filed a motion against Meridian and Horizon. *Goncalves*, 865 F.3d at 1249-51.

16. As articulated by the Third Circuit, a defendant must meet four requirements to remove a case under the federal officer removal statute: "(1) [the defendant] is a 'person' within the meaning of the statute; (2) the [plaintiff's] claims are based upon the [defendant's] conduct 'acting under' the United States, its agencies, or its officers; (3) the [plaintiff's] claims against [the defendant] are 'for, or relating to' an act under color of federal office; and (4) [the defendant] raises a colorable federal defense to the [plaintiff's] claims." *Papp*, 842 F.3d at 812 (citation omitted; alterations by *Papp* court).

17. The first factor in *Papp* is met here because "corporations" and "companies" qualify as "persons" under the statute. *Id*.

18. The second factor is also met. "'The 'acting under' requirement, like the federal removal statute overall, is to be 'liberally construe[d]' to cover actions that involve 'an effort to *assist*, or to help *carry out*, the federal supervisor's duties or tasks.'" *Id*. (citation omitted). "The classic case of such assistance as it relates to government contractors is when 'the private contractor acted under a federal officer or agency because the contractors 'help[ed] the Government to produce an item that it need[ed].'"" *Id*. (citations omitted). Under the "acting-under" requirement, it makes no difference whether "the complained-of conduct was done at the specific behest of the federal officer or agency." *Id*. at 813; *see also Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137, 138 (2d Cir. 2008) (government contractors may remove a case pursuant to the Federal Officer Removal Statute where "the acts for which they are being sued . . . occurred

12

because of what they were asked to do by the Government," even if the acts were not "specifically contemplated by the government contract."). Here, Meridian and Horizon (and other local Blue Cross and Blue Shield companies) "help the government fulfill the basic task of establishing a health benefits program for federal employees. OPM has direct and extensive control over these benefit contracts under the FEHBA." *Jacks*, 701 F.3d at 1233. "[B]roadly speaking, the subrogation provision [in the OPM-BCBSA contract] is necessarily a product of the benefit payment process, a process over which OPM exerts regulatory control." *Id*. For these reasons, among others, the court in *Jacks* concluded that in making efforts to obtain reimbursement, a local Blue Cross and Blue Shield company and its subrogation/reimbursement vendor Meridian were "acting under" an agency of the United States within the meaning of 28 U.S.C. § 1442(a)(1). *Jacks*, 701 F.3d at 1230-35. This case is no different.

19. The third requirement, "often referred to as the 'nexus' or 'causation' requirement, demands that the alleged conduct have been undertaken 'for or relating to' a federal office." *Papp*, 842 F.3d at 813. To meet this requirement, "'it is sufficient for there to be a connection or association between the act in question and the federal office.'" *Id*. (citation omitted). Here, Plaintiff seeks relief in the Motion against Meridian and Horizon expressly because of actions taken in the course of administering the Plan – specifically, in paying benefits and seeking reimbursement from Plaintiff in accordance with the Plan's terms and OPM's regulations. As noted above, Meridian and Horizon's actions in making efforts to seek reimbursement are mandated by OPM in the Service Benefit Plan's Statement of Benefits and the terms of the pertinent government contract. On this basis, Plaintiff's Motion is causally connected to Meridian and Horizon's actions under the direction of a federal agency and its officers. *See, e.g., Jacks*, 701 F.3d at 1230 n.3 (finding the requisite causal connection).

13

20. The fourth and final factor in *Papp* is met because there are colorable federal defenses to Plaintiff's claims against Meridian and Horizon. Here, Meridian and Horizon have five separate colorable federal defenses.

    a.    First, Plaintiff's requested relief against Meridian and Horizon – which appears to be based exclusively under state law – are preempted by FEHBA's express preemption provision, 5 U.S.C. § 8902(m)(1), which provides that the terms of FEHBA contracts concerning benefits and benefits payments shall supersede state law. The Supreme Court, among others, has held that FEHBA preempts state laws regarding subrogation or reimbursement. *See, e.g., Nevils*, 137 S. Ct. 1190; *Bell v. Blue Cross & Blue Shield*, 823 F.3d 1198 (8th Cir. 2016); *Helfrich v. Blue Cross & Blue Shield Ass'n*, 804 F.3d 1090, 1104-10 (10th Cir. 2015); *Shields v. Gov't Emps. Hosp. Ass'n*, 450 F.3d 643, 648 (6th Cir. 2006). And, OPM's regulations expressly state that preemption occurs in cases exactly like this one. *See* 5. C.F.R. § 890.106(h).

    b.    Second, any state law on which Plaintiff's requested relief is premised is displaced by federal common law, which governs the federal contract at the heart of this case. In a similar reimbursement dispute involving the Plan, the Tenth Circuit held that, because federal common law governs the FEHBA contract at issue, state law regarding reimbursement is displaced. *Helfrich*, 804 F.3d at 1095-1104.

    c.    Third, there is a colorable defense of sovereign immunity. In this regard, Plaintiff pursues a remedy to thwart reimbursement that is not permitted against the United States, to whose benefit reimbursement recoveries inure. *See Tantuwaya*, 169 F. Supp. 3d at 1070-71 (dismissing state law claims against Service Benefit Plan administrator on sovereign immunity grounds); *Ctr. for Reconstructive Breast Surgery, LLC v. Blue Cross Blue Shield of*

*La.*, No. 11-806, 2014 U.S. Dist. LEXIS 139442, at *19-23 (E.D. La. Sept. 30, 2014) (same); *Mentis El Paso, LLP v. Health Care Serv. Corp.*, 58 F. Supp. 3d 745, 751-57 (W.D. Tex. 2014) (same); *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, No. 3:12-cv-1607-O, 2014 U.S. Dist. LEXIS 12750 (N.D. Tex. Feb. 3, 2014) (same); *Calingo v. Meridian Res. Co. LLC*, No. 7:11-cv-628, 2011 U.S. Dist. LEXIS 83496 (S.D.N.Y. July 29, 2011) (holding sovereign immunity barred claims for monetary damages against FEHBA carrier in reimbursement dispute); *see also Omega Hosp.*, 592 F. App'x at 272 (citing *Innova*). In *Jacks*, the Eighth Circuit found each of the three defenses just listed – preemption, displacement by federal common law, and sovereign immunity – to be colorable for purposes of the Federal Officer Removal Statute. *Jacks*, 701 F.3d at 1235.

    d. Fourth, there is a federal defense based on ordinary conflict preemption principles, because OPM's regulations provide that "[a]ny subrogation or reimbursement recovery on the part of a FEHB carrier shall be effectuated against the recovery first (before any of the rights of any other parties are effectuated)." 5 C.F.R. § 890.106(e). This provision directly conflicts with Plaintiff's theory that New Jersey state law somehow means that he need not reimburse the Plan.

    e. Fifth, Meridian and Horizon have a federal defense because the relief sought against them arises from conduct specified by OPM in the pertinent government contract (and elsewhere), *i.e.*, pursuing a reimbursement recovery from Plaintiff.

### Removal Under 28 U.S.C. § 1441 Based on Federal Question Jurisdiction

21. Aside from being removable under 28 U.S.C. § 1442(a)(1), this case also is removable pursuant to 28 U.S.C. § 1441 based on federal question jurisdiction existing under 28 U.S.C. § 1331.

22. In *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006), the Supreme Court signaled that FEHBA reimbursement matters will be governed by federal common law if there is a "significant conflict . . . between an identifiable federal policy or interest and *the operation of state law*." *Id.* at 693 (internal quotation marks omitted; emphasis added). In *Empire*, federal common law did not govern because the parties' dispute was solely over factual issues associated with reimbursement and subrogation (such as whether the Plan properly calculated the reimbursement amount owed, *see id.* at 701); *Empire* did not involve an enrollee seeking to invoke a state law's operation so as to override either the Plan's authorization for full reimbursement or any of FEHBA's underlying objectives. *See Empire HealthChoice Assurance, Inc. v. McVeigh*, 396 F.3d 136, 141 (2d Cir. 2005) ("Tellingly, Empire's briefs on appeal fail to mention a single state law or state-imposed duty that runs contrary to the federal interests asserted in this case."). However, federal common law potentially can displace state law and allow for federal jurisdiction if a dispute exists between a FEHBA-plan enrollee and a FEHBA plan over the operation of a state law that conflicts with the Plan's reimbursement and subrogation terms or with FEHBA's objectives. *See Empire*, 396 F.3d at 150-51 (Sack, J. concurring); *accord Empire*, 547 U.S. at 693 (citing concurring opinion of Judge Sack in Second Circuit disposition); *see also Blue Cross Blue Shield Health Care Plan of Ga., Inc. v. Gunter*, 541 F.3d 1320, 1322 nn.1 & 2 (11th Cir. 2008).

23. Here, to the extent that Plaintiff relies on New Jersey state law to invalidate the Plan's reimbursement rights, a significant conflict exists between the operation of state law and federal policies and objectives. Because, as stated above, reimbursement recoveries by the Plan are returned to the federal Treasury, application of New Jersey state law would prevent money from being returned to the government's coffers. Furthermore, Congress mandated uniformity in

Plan administration, and the OPM-BCBSA contract likewise requires national uniformity in the Plan's reimbursement and subrogation practices. *See supra* ¶ 11.i. Applying individual states' laws would result in enrollees in different states having different reimbursement obligations in similar situations – a disuniformity contrary to Congress's objectives and the terms of the OPM-BCBSA contract. For precisely these reasons, the Tenth Circuit in *Helfrich* found that federal common law applied. *See* 804 F.3d at 1095-1104.

24. Because federal common law governs, the case raises a federal question and is removable to federal court. *See Nat'l Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845, 850 (1985) (Section 1331's "statutory grant of 'jurisdiction will support claims founded upon federal common law as well as those of a statutory origin'") (citation omitted); *New SD, Inc. v. Rockwell Int'l Corp.*, 79 F.3d 953, 955 (9th Cir. 1996) (removal jurisdiction upheld because federal common law controlled dispute); *Rievley v. Blue Cross Blue Shield of Tenn.*, 69 F. Supp. 2d 1028, 1037 (E.D. Tenn. 1999) (in FEHBA case, upholding removal because federal common law displaced state law); *Kight v. Kaiser Found. Health Plans of Mid-Atlantic States, Inc.*, 34 F. Supp. 2d 334, 340-41 (E.D. Va. 1999) (same).

25. Alternatively, if for some reason we have misconstrued the basis for Plaintiff's Motion and it is based on federal, not state, law, then the case is still removable since the Court would have jurisdiction under 28 U.S.C. § 1331.

\* \* \*

26. Because, among other grounds, this case is removed under 28 U.S.C. § 1442(a)(1), this case is not being "removed solely under section 1441(a)," and thus the consent of all defendants is not required. 28 U.S.C. § 1446(b)(2)(A); *see also Alban v. Exxon Mobil Corp.*, No. MJG-06-3098, 2006 U.S. Dist. LEXIS 98103, at \*6 (D. Md. Dec. 27, 2006); *Freiberg v.*

*Swinerton & Walberg Prop. Servs., Inc.*, 245 F. Supp. 2d 1144, 1148 (D. Colo. 2002).

27. Pursuant to 28 U.S.C. § 1446(d), Meridian and Horizon will promptly provide written notice of this removal to the Superior Court of New Jersey, Bergen County.

Dated: November 3, 2022
New York, New York

Respectfully submitted,

**STRADLEY RONON STEVENS & YOUNG**

By: _____
Andrew I. Hamelsky
Jenifer A. Scarcella
100 Park Ave., Suite 2000
212.404.0638
*Attorneys for*
*Meridian Resource Company, LLC and*
*Horizon Blue Cross Blue Shield of*
*New Jersey*